UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DONALD SULLIVAN,

          Plaintiff,                    CIVIL ACTION NO. 07-12218

      v.                          DISTRICT JUDGE DAVID M. LAWSON

MICHIGAN DEPARTMENT OF        MAGISTRATE JUDGE VIRGINIA M. MORGAN
CORRECTIONS, TERESA WILLIAMS,
JOHN L. ABDOO, SHIRLEY GORDON,
LINDA TRIBLEY, SCOTT SPRADER,
JAMES KILLIPS, and SCOTT COFFEY,

          Defendants.
_____/


**REPORT AND RECOMMENDATION**


**I.  Introduction**

      This is a *pro se* 42 U.S.C § 1983 action in which the plaintiff, an inmate in the custody of

the Michigan Department of Corrections (MDOC), alleges that defendants, MDOC and

employees of MDOC[1], violated his rights under the United States Constitution.  The matter

---

[1]The individual defendants are Ryan Correctional Facility employees Teresa Williams (Records Supervisor), John L. Abdoo (Assistant Resident Unit Supervisor) and Shirley Gordon (Acting Assistant Deputy Warden), Newberry Correctional Facility employees Linda Tribley (Assistant Deputy Warden of Housing) and Scott Sprader (Resident Unit Manager), and Kinross Correctional Facility Transportation Officers James Killips and Scott Coffey.  (Complaint, ¶¶ 3-9)

comes before the court on defendants' motion for summary judgment (D/E #20).  For the
reasons stated below, the court recommends that defendants' motion be **GRANTED IN PART**
and that the claims against MDOC, Williams, Abdoo, Gordon, Killips and Coffey be dismissed
with prejudice.  The claim against Tribley and Sprader should be allowed to proceed.

## II.  Background

### A.  Factual Allegations

At all times relevant to this action, plaintiff was an inmate in the custody of MDOC.  The
incidents giving rise to plaintiff's complaint took place at the Ryan Regional Facility (RRF) in
Detroit, Michigan, the Newberry Correctional Facility (NCF) in Newberry, Michigan, and the
Kinross Correctional Facility (KCF) in Kincheloe, Michigan.

On July 14, 1997, plaintiff was sentenced in Michigan state court to serve 22 years to 50
years' imprisonment for second-degree murder, and two years' imprisonment for possession of a
firearm during the commission of a felony.  (Complaint, ¶ 14)  At that time, Judge Vera Massey
Jones ordered that plaintiff be awarded 1,352 jail credit days for the felony-firearm sentence.
(Complaint, ¶ 14)  On September 11, 1997, Judge Jones amended her prior order and found that
plaintiff should be awarded 730 jail credit days on the felony-firearm sentence and 622 jail credit
days on the second-degree murder sentence.  (Complaint, ¶ 14)

While residing at RRF, plaintiff wrote Williams and asked why his early release was set
for 2013 instead of 2009 or 2011.  (Complaint, ¶ 15)  Plaintiff also stated that he was entitled to a
certificate of discharge on his felony-firearm sentence because that sentence was completed prior
to MDOC taking custody of plaintiff.  (Complaint, ¶ 15)  Plaintiff  found Williams' response

unsatisfactory, so he filed a grievance.  (Complaint, ¶ 15)  The grievance was denied at all three

steps of the MDOC grievance process as without merit.  (Complaint, ¶¶ 15-17)

On June 9, 2005, plaintiff filed a writ of habeas corpus against Raymond D. Booker, the

warden at RRF.  (Complaint, ¶ 19)  Subsequently, plaintiff filed a civil action against Booker.

(Complaint, ¶ 19)  That civil action was involuntarily dismissed and plaintiff filed an appeal with

the Michigan Court of Appeals.  (Complaint, ¶ 19)  After the clerk at the Michigan Court of

Appeals directed plaintiff to pay a partial filing fee, Abdoo and Gordon had plaintiff transferred

to NCF on April 18, 2006.  (Complaint, ¶ 19)  Additionally, while Abdoo and Gordon

transferred plaintiff to NCF, they purposely withheld the transfer of plaintiff's institutional funds

so plaintiff could not pay the partial filing fee.  (Complaint, ¶ 19)

While residing in a twelve man cube at NCF, plaintiff used a typewriter and an overhead

light to draw up documents.  (Complaint, ¶ 24)  The other inmates in the cube began to complain

about the typing and the light, and subsequently, they threatened plaintiff.  (Complaint, ¶¶ 24-25)

 Plaintiff informed Tribley by letter of the threats and the possibility of a serious altercation, but

she never responded.  (Complaint, ¶ 25)  Plaintiff also sent a letter to Sprader, but he never

responded either.  (Complaint, ¶ 26)  On June 12, 2006, plaintiff was assaulted from behind by

an unknown assailant while leaving his housing unit.  (Complaint, ¶ 27)

On June 16, 2006, plaintiff was transferred from NCF to KCF by Killips and Coffey.

(Complaint, ¶ 32)  During the transport, plaintiff's typewriter was damaged.  (Complaint, ¶ 32)

### B.  Procedural History

On May 22, 2007, plaintiff filed a complaint against defendants.  (D/E #1)  In Count I, plaintiff alleged that he is unconstitutionally being forced by MDOC and Williams to serve a longer term of imprisonment than he was sentenced to serve.  (Complaint, ¶ 17)  In Count II, plaintiff alleged that Abdoo and Gordon violated his rights through an improper, retaliatory transfer and that, by transferring plaintiff to a "high assaultive facility," Abdoo and Gordon are the direct and proximate cause of the assault plaintiff suffered at NCF.  (Complaint, ¶¶ 19-22)  In Count III, plaintiff alleged that both Tribley and Sprader failed to respond to the threats against plaintiff and, therefore, they are directly responsible for plaintiff being assaulted.  (Complaint, ¶ 30)  In Count IV, plaintiff alleged that both Killips and Coffey are responsible for the damage done to plaintiff's typewriter during plaintiff's prison transfer.  (Complaint, ¶¶ 32-33)  In Count V, plaintiff repeated and elaborated on his earlier allegations.  (Complaint, ¶¶ 35-42)

On September 24, 2007, defendants filed the motion for summary judgment before the court.  (D/E #20)  In that motion, defendants argue that plaintiff's claim against MDOC and Williams is barred because his plaintiff has not established that his conviction and sentence has been invalidated.  Defendants also assert that MDOC is immune from suits brought under 42 U.S.C. § 1983.  With respect to plaintiff's retaliation claim against Abdoo and Gordon, defendants argue that plaintiff cannot demonstrate that an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in protected conduct or that any adverse action was motivated at least in part by the plaintiff's protected conduct. Defendants also argue that, because neither Abdoo nor Gordon have any involvement with

-4-

prisoner funds, they were not personally involved in any retaliation.  With respect to plaintiff's claim against Tribley and Sprader, defendants argue that Tribley and Sprader are entitled to summary judgment on plaintiff's failure to protect claim because plaintiff failed to exhaust his administrative remedies and because they had no knowledge of any threat of assault to plaintiff. With respect to plaintiff's claim against Killips and Coffey, defendants argue that Killips and Coffey are entitled to summary judgment because plaintiff cannot prove that they damaged his typewriter and because, even if they did, plaintiff has other, adequate state remedies available to him.  In light of defendants' specific arguments with respect to each of plaintiff's claims, defendants argue that they are entitled to qualified immunity.

On October 22, 2007, plaintiff filed a response to defendants' motion for summary judgment.  (D/E #27)  With respect to the claim against MDOC and Williams, plaintiff argues MDOC is a separate entity from the state of Michigan and it is directly liable for the tortious acts committed upon plaintiff.  Plaintiff also argues that his claim is not barred because he is not challenging his conviction or sentence.  Instead, plaintiff challenges the constitutionality of the procedures used in calculating when plaintiff may receive a parole hearing.  With respect to his retaliation claim against Abdoo and Gordon, plaintiff argues that Abdoo and Gordon have admitted they retaliated against plaintiff and that their admission compels denial of their motion for summary judgment.  Plaintiff also asserts that, even if he had no constitutional right to be confined in a particular prison, a transfer can create a deprivation of rights where access to the courts is impeded.  With respect to his claim against Tribley and Sprader, plaintiff argues that he did contact both Tribley and Sprader regarding the threats against him and their statements that

they had no notice are fraudulent and perjured.  With respect to his claim against Killips and

Coffey, plaintiff argues that Killips and Coffey are not entitled to summary judgment where they

have admitted in their affidavits that they are responsible for the property and where plaintiff is

not limited to state remedies.

## III.  Standard of Review

Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure

56(b), which states that "[a] party against whom a claim, counterclaim, or cross-claim is asserted

or a declaratory judgment is sought may, at any time, move without or without supporting

affidavits for a summary judgment in the party's favor as to all or any part thereof."  Summary

judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R.

Civ. P. 56(c).

In deciding a motion for summary judgment, the court must view the evidence and draw

all reasonable inferences in favor of the non-movant.  See Matsushita Electric Industrial Co.,

Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 547, 587, 106 S.Ct. 1348, 1356 (1986); see also

B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001).  The moving party

bears the initial burden of demonstrating the absence of a genuine issue of material fact.  Once

the moving party has carried his burden, the party opposing the motion "must come forward with

specific facts showing that there is a genuine issue for trial."  Matsushita, 475 U.S. at 587, 106

S.Ct. 1348.  The opposing party cannot merely rest upon the allegations contained in his

pleadings.  Rather, he must submit evidence demonstrating that material issues of fact exist.

Banks v. Wolfe County Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-

moving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587, 106 S.Ct. 1348

(quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575,

1592 (1968)).

**IV.  Analysis**

       **A. Claim Against MDOC**

       In Count I, plaintiff alleges that he "is being unconstitutionally forced to serve a longer

term of imprisonment by Defendant's (sic) Williams and MDOC, than he was originally

sentenced to serve by the court" (Complaint, ¶ 17) because Williams and MDOC have failed to

properly credit plaintiff's felony-firearm sentence with 730 days.  (Complaint, ¶¶ 16-17)  As part

of Count V, plaintiff similarly alleges that MDOC deliberately miscalculated plaintiff's early

release date.  (Complaint, ¶ 37)

       Plaintiff cannot pursue a claim against MDOC pursuant to § 1983.  Under that statute, a

*person* who deprives an individual of any federal constitutional or statutory right is liable to that

individual.  However, state agencies, such as MDOC, are not considered a "person" for purposes

of liability under § 1983.  See Howlett v. Rose, 496 U.S. 356, 383, 110 S.Ct. 2430, 110 L.Ed.2d

332 (1990); Will v. Mich. Dep't of State Police, 491 U.S. 58, 70-71, 109 S.Ct. 2304, 105 L.Ed.2d

45 (1989); Gean v. Hattaway,  330 F.3d 758, 766-767 (6th Cir. 2003); Dulai v. Michigan, Dept.

of Community Health, No. 01-2407,  71 Fed. Appx. 479, 481 (6th Cir. July 25, 2003).

Additionally, the Eleventh Amendment bars plaintiffs claims against MDOC. The

Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to
> extend to any suit in law or equity, commenced or prosecuted
> against one of the United States by Citizens of another state, or by
> Citizens or subjects of any foreign State. [U.S. Const. amend. XI.]

Courts have construed that language broadly and the Eleventh Amendment generally bars

suits in federal court against a state and its departments or agencies unless the state has waived

its sovereign immunity or unequivocally consented to be sued.  See Pennhurst State Sch. &

Hosp. v. Halderman, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); Skinner v.

Govorchin, 463 F.3d 518, 524 (6th Cir. 2006).[2]  Moreover, "'[i]t is … well established that even

though a State is not named a party to the action, the suit may nonetheless be barred by the

Eleventh Amendment[,]' if the suit is somehow deemed to be against the State."  Doe v.

Wigginton, 21 F.3d 733, 736 (6th Cir. 1994), quoting Edelman v. Jordan, 415 U.S. 651, 663, 94

S.Ct. 1347, 39 L.Ed.2d 662 (1974).

The Eleventh Amendment bars a suit brought in federal court against a state and its

departments or agencies unless the state has waived its sovereign immunity or unequivocally

---

[2]As discussed by the Sixth Circuit in Ernst v. Rising, 427 F.3d 351, 358-359 (6th Cir.
2005), a State's immunity comes with a host of exceptions; the immunity does not attach if the
lawsuit is not against the State or an arm of the State, the immunity does not extend to counties
and similar municipal corporations, the immunity does not apply if the lawsuit is filed against a
state official for purely injunctive relief enjoining the official from violating federal law, the
immunity may be abrogated by Congress when exercising its enforcement authority under the
Fourteenth Amendment, and the immunity does not apply when the Federal Government brings
the lawsuit.  Additionally, a State may elect to waive that immunity through legislation through
its conduct in litigation.  Ernst, 427 F.3d at 358.  None of these exceptions are applicable here.

consented to be sued.  Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100, 104 S.Ct.

900, 79 L.Ed.2d 67 (1984); Alabama v. Pugh, 438 U.S. 781, 782, 98 S.Ct. 3057, 57 L.Ed.2d

1114 (1978); Abick v. Michigan, 803 F.2d 874, 876-77 (6th Cir. 1986).  Because the MDOC is a

state agency and the state of Michigan has not consented to civil rights suits in the federal courts,

the MDOC is entitled to Eleventh Amendment immunity.  See Pennhurst, 465 U.S. at 100, 104

S.Ct. 900; Pugh, 438 U.S. at 782, 98 S.Ct. 3057; Abick, 803 F.2d at 877.

### B. Claims Against Individual Defendants

Each individual defendant in this case argues he is entitled to summary judgment on the

grounds of qualified immunity.  Qualified immunity is "an entitlement not to stand trial or face

the other burdens of litigation."  Saucier v. Katz, 533 U.S. 194, 200; 121 S.Ct. 2151; 150

L.Ed.2d 272 (2001), quoting Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d

411 (1985).  The privilege is an immunity from suit and not a mere defense to liability.  Saucier,

533 U.S. at 200.  As a result, courts have "repeatedly have stressed the importance of resolving

immunity questions at the earliest possible stage in litigation."  Hunter v. Bryant, 502 U.S. 224,

227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam).

A court required to rule upon the qualified immunity issue must first consider whether

the facts alleged show the officer's conduct violated a constitutional right.  Saucier, 533 U.S. at

201.  If a violation could be shown, the court must then ask whether that constitutional right was

clearly established.  "This inquiry, it is vital to note, must be undertaken in light of the specific

context of the case, not as a broad general proposition; and it too serves to advance

understanding of the law and to allow officers to avoid the burden of trial if qualified immunity

is applicable." Saucier, 533 U.S. at 201.

### 1. Claim Against Williams

In Count I, plaintiff alleges that he "is being unconstitutionally forced to serve a longer

term of imprisonment by Defendant's (sic) Williams and MDOC, than he was originally

sentenced to serve by the court" (Complaint, ¶ 17) because Williams and MDOC have failed to

properly credit plaintiff's felony-firearm sentence with 730 days.  (Complaint, ¶¶ 16-17)  As part

of Count V, plaintiff similarly alleges that Williams wilfully disregarded a lawful court order to

credit plaintiff's felony firearm sentence with 730 jail credit days and plaintiff's second-degree

murder sentence with 622 days, and to calculate plaintiff's early release date from October 30,

1995 (Complaint, ¶ 38).

The United States Supreme Court has held that a prisoner in state custody cannot use a §

1983 action to challenge "the fact or duration of his confinement."  Preiser v. Rodriguez, 411

U.S. 475, 489, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); see also Wolff v. McDonnell, 418 U.S.

539, 554, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); Heck v. Humphrey, 512 U.S. 477, 481, 114

S.Ct. 2364, 129 L.Ed.2d 383 (1994); Edwards v. Balisok, 520 U.S. 641, 648, 117 S.Ct. 1584,

137 L.Ed.2d 906 (1997).  Instead, "habeas corpus is the exclusive remedy for a state prisoner

who challenges the fact or duration of his confinement and seeks immediate or speedier release,

even though such a claim may come within the literal terms of § 1983."  Heck v. Humphrey, 512

U.S. 477, __, 114 S.Ct. 2364, 2369 (1994), citing Preiser, 411 U.S. at 488-90 (1973); Best v.

Kelly, 39 F.3d 328, 330 (D.C.Cir.1994).  Consequently, a § 1983 action is barred when a state

prisoner challenges the fact or duration of his confinement, and seeks either "immediate release from prison," or the "shortening" of his term of confinement.  Wilkinson v. Dotson, 544 U.S. 74, 79, 125 S.Ct. 1242, 161 L.Ed.2d. 253 (2005); quoting Preiser, 411 U.S. at 482.

An action for restoration of credits in effect demands immediate release or a shorter period of detention while attacking the very duration of physical confinement, and thus it lies at "the core of habeas corpus."  Wilkinson v. Dotson, 544 U.S. 74, 81-82, 125 S.Ct. 1242 (2005), quoting Preiser, 411 U.S. at 487-488.  In this case, plaintiff's claim for relief, i.e., the application jail credit to his sentences and a recalculation of his early release date, directly challenges the duration of his confinement and, therefore, it is only cognizable under § 2254.  See Preiser, 411 U.S. at 488-90.[3]

In his response, plaintiff argues that he is not challenging the fact or duration of his confinement and, instead, he merely challenges the procedures Williams used in calculating the date he could go before the parole board.  (Plaintiff's Brief in Response to Defendants' Motion for Summary Judgment, p. 3)  In making that argument, plaintiff relies solely on Wilkinson, 544 U.S. 74.  The Supreme Court in Wilkinson concluded that the plaintiffs' claims were cognizable under § 1983 where the plaintiffs sought relief that would render invalid the state procedures used to deny parole eligibility and parole suitability.  As found by the Court, neither of the plaintiffs in that case sought an injunction ordering his immediate or speedier release into the

_____

[3]While plaintiff correctly notes that he seeks damages from Williams for the alleged violation of his constitutional rights (Complaint, p. 16), that does not change the fact that he is also directly challenging the duration of his confinement and that his claim cannot be brought pursuant to § 1983.

-11-

community, and a favorable judgment would not "necessarily imply the invalidity of [their] conviction[s] or sentence[s]." Wilkinson, 544 U.S. at 82, quoting Heck, 512 U.S. at 487. Success for the first plaintiff did not mean immediate release from confinement or a shorter stay in prison; it meant, at most, new a parole eligibility review that could, at most, speed consideration of a new parole application. Wilkinson, 544 U.S. at 82. Success for the other plaintiff meant, at most, a new parole hearing at which parole authorities might, in their discretion, decline to shorten his prison term. Wilkinson, 544 U.S. at 82.

Contrary to plaintiff's argument, Wilkinson does not support his position. Although, pursuant to Wilkinson, due process challenges that would result in an earlier parole hearing are cognizable under § 1983, plaintiff's sole justification for an earlier parole review is that his jail credit was miscalculated and any recalculation would necessarily affect the duration of his entire sentence, regardless of whether he was granted parole or not. As discussed above, an action for restoration of credits in effect demands immediate release or a shorter period of detention while attacking the very duration of physical confinement, and thus it lies at "the core of habeas corpus." Wilkinson v. Dotson, 544 U.S. 74, 81-82, 125 S.Ct. 1242 (2005), quoting Preiser, 411 U.S. at 487-488. Given that plaintiff is barred from pursuing his claim against Williams, Williams is entitled to summary judgment.

**2. Claim Against Abdoo and Gordon**

In Count II, plaintiff alleges that defendants Abdoo and Gordon violated his rights through the an improper, retaliatory transfer and that, by transferring plaintiff to a "high assaultive facility", and that Abdoo and Gordon are the direct and proximate cause of the assault plaintiff suffered at NCF.  (Complaint, ¶¶ 19-22)  As part of Count V, plaintiff alleges that Abdoo and Gordon committed acts of gross negligence, malfeasance and misconduct in an attempt to violate plaintiff's constitutional rights by transferring him, deliberately withholding his funds from transfer, and disregarding his safety by transferring him to a high assaultive facility, where plaintiff was subsequently assaulted.  (Complaint, ¶ 40)

To state a claim alleging retaliation for exercising a constitutional right, a plaintiff must show that (1) he engaged in protected conduct; (2) the defendant took an adverse action against him "that would deter a person of ordinary firmness from continuing to engage in that conduct;" and (3) that the adverse action was taken (at least in part) because of the protected conduct. Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir.1999) (en banc).  "Although the elements of a First Amendment retaliation claim are constant, the underlying concepts that they signify will vary with the setting-whether activity is 'protected' or an action is 'adverse' will depend on context." Bell v. Johnson, 308 F.3d 594, 602-603 (6th Cir.2002) (internal quotation marks omitted).  In this case, defendants only argue that there is no genuine issue of material fact with respect with the second and third elements of the retaliation claim.

**a. Adverse Act**

Defendants first argue that there was no adverse action in this case and, therefore, there was no constitutional violation and Abdoo and Gordon are entitled to qualified immunity. "An adverse action is one that would 'deter a person of ordinary firmness' from the exercise of the right at stake." Thaddeus-X v. Blatter, 175 F.3d 378, 396 (6th Cir. 1999), quoting Bart v. Telford, 677 F.2d 622, 625 (7th Cir.1982). See also Bloch v. Ribar, 156 F.3d 673, 678 (6th Cir.1998) (requiring plaintiff to prove, for a First Amendment retaliation claim, that "the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity"). Moreover, "in most cases, the question of whether an alleged retaliatory action poses a sufficient deterrent threat to be actionable will not be amenable to resolution as a matter of law." Bell v. Johnson, 308 F.3d 594, 603 (6th Cir. 2002). Unless the claimed retaliatory action is truly inconsequential, the plaintiff's claim should go to the jury. Bell, 308 F.3d at 603.

Also, as the Thaddeus-X court noted, "since there is no justification for harassing people for exercising their constitutional rights, [the deterrent effect] need not be great in order to be actionable." 175 F.3d at 397 (quoting Bart v. Telford, 677 F.2d 622, 625 (7th Cir.1982)). A constitutional tort, however, requires that the plaintiff suffer an injury, and it would certainly "trivialize the First Amendment to hold that harassment for exercising [one's constitutional rights] was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise ...." Thaddeus-X, 175 F.3d at 397, quoting Bart, 677 F.2d at 625. Thus, the test is, if a reasonable trier of fact could conclude that a retaliatory act would deter a person from

-14-

exercising his rights, then the act may not be dismissed at the summary judgment stage.  Bell, 308 F.3d at 603.

In this case, the alleged retaliatory action was primarily a transfer to another prison. Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct.  See Hix v. Tennessee Dept. of Corrections, 196 Fed. Appx. 350, 358, (6th Cir. August 22, 2006); King v. Zamiara, 150 Fed. Appx. 485, 494 (6th Cir. October 7, 2005); Smith v. Yarrow, 78 Fed. Appx. 529, 543-44 (6th Cir. October 20, 2003) (collecting cases).  However, where there are aggravating factors, the courts have been willing to find that a prison transfer would deter a person of ordinary firmness.  See Siggers-El v. Barlow, 412 F.3d 693, 704 (6th Cir. 2005); Hix, 196 Fed. Appx. at 358.  In Siggers-El, the aggravating factors accompanying the transfer included certain foreseeable consequences of the transfer; loss of a high paying job needed to pay for the plaintiff's attorney and an increased difficulties for the plaintiff's attorney in visiting with or representing the plaintiff because he was moved further away from her.  412 F.3d at 704.  See also McWright v. Gerald, No. 03-70167, 2004 WL 768641, *5 (E.D. Mich. March 26, 2004) (finding that the plaintiff met the elements of a retaliatory transfer claim where evidence suggested a prison transfer was undertaken purposefully and expressly to interfere with an inmate's right of access to his attorney.)

Two possible aggravating factors accompany the alleged retaliatory transfer in this case; a withholding of the transfer of funds in order to deny plaintiff the ability to pay a filing fee to the Michigan Court of Appeals and the fact that the transfer was to a "high assaultive facility."

-15-

With respect to the first potential aggravating factor, if it were true, the delayed transfer of funds combined with plaintiff's transfer could constitute an adverse act that would deter a person from exercising his rights.  In Siggers-El, the Sixth Circuit found that the transfer would deter a person of ordinary firmness from engaging in protected conduct because, in addition to being transferred, the plaintiff in that case also suffered a number of foreseeable consequences that inhibited his ability to access the courts.  Siggers-El, 412 F.3d at 702.  In this case, plaintiff alleges that, in addition to being retaliatory transferred, Abdoo and Gordon delayed transfer of his funds and impeded his ability to access the court.  Moreover, even if Abdoo and Gordon did not personally delay the transfer of funds, if the impediment to plaintiff's access to the courts was a foreseeable consequent of the transfer they are alleged to have caused, the retaliatory transfer would constitute an adverse act.  See Siggers-El, 412 F.3d at 702.

However, while plaintiff has stated a retaliation claim with respect to his retaliatory transfer and delay of transferring funds, he has failed to demonstrate that a genuine issue of material fact exists as to that claim.  Both Abdoo and Gordon provided affidavits denying that they had any authority over or access to plaintiff's funds.  (Abdoo's Affidavit, ¶ 5, attached as Exhibit 8 to Defendants' Motion for Summary Judgment; Gordon's Affidavit, ¶ 5, attached as Exhibit 9 to Defendants' Motion for Summary Judgment)  Defendants also noted that MDOC polices dictate the process and time limits used by prison accounting staff in transferring funds:

> When a prisoner transfers from one CFA institution to another for
> any reason other than placement in the Special Alternative
> Incarceration Program (SAI), the Warden of the sending institution
> shall ensure the prisoner's institutional account is transferred to the
> receiving institution within five business days following the

> prisoner's transfer.  Funds received for credit to the account after transfer of the account shall transfer within five business days after receipt.  The CFA Deputy Director shall be notified in writing through the appropriate chain of command if funds are not sent within these required time periods. [PD 04.02.105, "Prisoner Funds" ¶¶ CC attached as attachment #1 to Exhibit 9 of Defendants' Motion for Summary Judgment]

MDOC policies further dictated:

> The transfer of a prisoner's account shall be expedited upon request of the Warden of the receiving institution or designee when the prisoner needs access to the account to pay court-ordered filing fees in a timely manner.  It is the prisoner's responsibility to notify staff sufficiently in advance of when the funds are needed so this can be accomplished.  [PD 04.02.105, "Prisoner Funds" ¶¶ DD, attached as attachment #1 to Exhibit 9 of Defendants' Motion for Summary Judgment]

In his response, plaintiff merely states, without any evidentiary support, that "Defendants (sic) affidavits state (sic) they have no control or access to prisoner's accounts, are perjured statements, because all ARUS's, RUM's, and ADW's have access to any prisoner's account, files or institutional records, at their disposal either by computer or telephone, which is part of their function as ARUS's, RUM's, and Deputy Warden's (sic).  (Plaintiff's Response to Defendants' Motion for Summary Judgment, p. 14)

Defendants' affidavits and a MDOC policy directive demonstrate that Abdoo and Gordon had no role in the transfer of plaintiff's funds.  Moreover, given the deadlines set for the transfer of funds, as well as the procedures plaintiff could utilize if he need his funds earlier in order to pay court-ordered filing fees, that same MDOC policy directive demonstrates that any impediment to plaintiff's access to the courts because of the transfer was not foreseeable.

Consequently, no genuine issue of material fact exists with respect to the issue of whether the retaliatory transfer and delay of transferring of funds constituted an adverse act.

As noted above, however, another potential aggravating factor that could combine with the transfer to form an adverse act is plaintiff's claim that defendants deliberately transferred him to a "high assaultive facility."  In their motion for summary judgment, defendants make no argument with respect to this issue.  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact and, only after the moving party has carried his burden, must the party opposing the motion must come forward with specific facts.  Matsushita, 475 U.S. at 587.  In this case, by making no argument regarding plaintiff's claim that the retaliatory transfer was to a high assaultive facility constituted an adverse act, Abdoo and Gordon have failed to meet their initial burden in making a motion for summary judgment.  Consequently, they are not entitled to summary judgment on the basis that there was no adverse act.

**b. Causation**

Defendants also argue that Abdoo and Gordon are entitled to qualified immunity and summary judgment because, even if there was an adverse act, there was no causation.  Under the causation element of a prisoner's prima facie case for retaliation, the subjective motivation of the decision-maker is at issue and the plaintiff must show that the decision was motivated, at least in part, by the plaintiff's protected activity.  Thaddeus-X, 175 F.3d at 399.  Once the plaintiff has met this burden, if the defendant can show that the same action would have been taken in the absence of protected activity, the defendant is entitled to prevail on summary judgment.  Smith

v. Campbell, 250 F.3d 1032, 1038 (6th Cir. 2001).  There is no causation where the defendant is

not the decision-maker.  See Smith, 250 F.3d at 1038 (holding that one of the defendants'

comments did not demonstrate a causal connection between plaintiff's filing of grievances and

the decision to transfer plaintiff because it was uncontroverted that the defendant making the

comment was not the decision-maker in the case); Shehee v. Luttrell, 199 F.3d 295, 301 (6th Cir.

1999) (holding that despite prisoner's allegation that prison employees instigated the loss of his

commissary position, the prison employees cannot be liable on plaintiff's retaliation claim

because they were not involved in the decision to terminate the plaintiff); Bush v. Dictaphone

Corp., 161 F.3d 363, 369 (6th Cir.1998) (holding that statements by nondecision-makers cannot

suffice to satisfy the plaintiff's burden of demonstrating animus).  Moreover, while retaliation

can rarely be supported with direct evidence of intent, the plaintiff must have more than

conclusory allegations of retaliatory motive unsupported by material facts.  Harbin-Bey v.

Rutter,  420 F.3d 571, 580 (6th Cir. 2005).

In this case, according to Abdoo's affidavit, he was unaware that plaintiff had filed a

grievance when plaintiff was transferred.  (Abdoo's Affidavit, ¶ 4, attached as Exhibit 8 to

Defendants' Motion for Summary Judgment)  Abdoo also states that plaintiff was transferred "to

accommodate a prisoner from Newberry Correctional Facility (NCF) requiring access to MPRI

Parole Programming at RRF.  (Abdoo's Affidavit, ¶ 6, attached as Exhibit 8 to Defendants'

Motion for Summary Judgment)  Plaintiff's transfer order further provides that plaintiff was

transferred to accommodate a MPRI prisoner.  (Transfer Order, attached as attachment #4 to

Exhibit 8 of Defendants' Motion for Summary Judgment)  Gordon's affidavit states that plaintiff

was transferred in accordance with MDOC policies and that she acted in good faith at all times. (Gordon's Affidavit, ¶¶ 6, 9, attached as Exhibit 9 to Defendants' Motion for Summary Judgment)

In response, plaintiff argues that defendants produce no documents displaying a request by NCF to RFF or by RFF to NCF for an exchange of prisoners.  (Plaintiff's Response to Defendants' Motion for Summary Judgment, p. 13)  Plaintiff also points to a transit list that, according to plaintiff, demonstrates that no prisoner was transferred from NCF to RFF on the day plaintiff was transferred.  (Transit List, attached as Exhibit 3 to Plaintiff's Response to Defendants' Motion for Summary Judgment)  However, the transit list plaintiff provides is only the transit list regarding plaintiff and his transfers to various prisons; by its very nature that transit list would not display the transfers of any other prisoners.

Viewing the evidence in a light most favorable to plaintiff, as the court must, Abdoo and Gordon have demonstrated that there is no genuine issue of material fact as to the element of causation and they are entitled to judgment as a matter of law.  Abdoo and Gordon's evidence establishes both that they did not transfer plaintiff because of plaintiff's protected conduct and that they had a legitimate reason for transferring plaintiff.  Plaintiff provides no evidence in his response disputing defendants' evidence except for a transit list that does not display what plaintiff claims it does.  While retaliation can rarely be supported with direct evidence of intent, the plaintiff must have more than conclusory allegations of retaliatory motive unsupported by material facts.  Harbin-Bey, 420 F.3d at 580.  Plaintiff has failed to provide more than

-20-

conclusory allegations of retaliatory motive in this case and Abdoo and Gordon are entitled to summary judgment.

### 3. Claim Against Tribley and Sprader

In Count III, plaintiff alleged that both Tribley and Sprader failed to respond to the threats against plaintiff and, therefore, they are directly responsible for plaintiff being assaulted. (Complaint, ¶ 30)  As part of Count V, plaintiff alleges that Tribley and Sprader committed acts of deliberate indifference, gross negligence, malfeasance, misconduct and in violation of plaintiff's constitutional rights by failing to investigate plaintiff's claims that he was having serious problems in his housing unit or protect plaintiff from personal injury.  (Complaint, ¶ 41)

#### a.  Exhaustion of Administrative Remedies

Pursuant to the Prison Litigation Reform Act of 1995 (PLRA), 110 Stat. 1321-71, as amended 42 U.S.C. §§ 1997e *et seq*., "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Accordingly, exhaustion of available administrative remedies is mandatory in order for prisoners to bring a claim in federal court.  Jones v. Bock, __ U.S. __, __, 127 S.Ct. 910, 914, 166 L.Ed.2d 798 (2007); Woodford v. Ngo, __ U.S. __, __, 126 S.Ct. 2378, 2383, 165 L.Ed.2d 368 (2006).  Not only must the prisoner exhaust all available remedies but such exhaustion must be proper, including "compliance with an agency's deadlines and other critical procedural rules."  Woodford, 126 S.Ct. at 2386 (holding that an inmate's exhaustion must be in compliance with applicable grievance procedures, specifically deadlines,

because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings").  However, § 1997e does not impose a jurisdictional bar to federal jurisdiction, Curry v. Scott, 249 F.3d 493, 501 -503 (6th Cir. 2001), and while the preferred practice is for inmates to complete the grievance process prior to the filing of an action, "because the exhaustion requirement is not jurisdictional, district courts have some discretion in determining compliance with the statute."  Wyatt v. Leonard, 193 F.3d 876, 879 (6th Cir. 1999).

        In this case, the alleged assault occurred on June 12, 2006.  On July 3, 2006, plaintiff filed a grievance regarding Tribley and Sprader's alleged failure to protect him.  (Grievance NCF 0607-756-03-z form, attached as attachment #1 to Exhibit 5 of Defendants' Motion for Summary Judgment)  The grievance was received at Step I on July 12, 2006 and subsequently denied on July 26, 2006.  (Grievance NCF 0607-756-03-z form, attached as attachment #1 to Exhibit 5 of Defendants' Motion for Summary Judgment)  In that denial, the grievance reviewer stated that the plaintiff could not be interviewed because he was transferred on June 16, 2006. The reviewed also stated that "[n]o names or numbers of any prisoners could be provided by [plaintiff] so his claim of protection could not be substantiated . . . Sprader does not recall any kites or complaints from Sullivan nor did ARUS LaFond."  (Grievance NCF 0607-756-03-z form, attached as attachment #1 to Exhibit 5 of Defendants' Motion for Summary Judgment) Plaintiff appealed to Step II, but his appeal was denied because, in addition to the evidence discussed in the Step I denial, Tribley stated that she never received a kite from plaintiff requesting protection or stating that plaintiff was in fear for his life.  (Memorandum regarding Grievance Identifier NCF 0607-00-756-03z, attached as part of attachment #1 to Exhibit 5 of

-22-

Defendants' Motion for Summary Judgment)  Plaintiff then appealed his grievance to Step III.

At Step III, his grievance was denied because plaintiff "presented insufficient evidence upon

appeal from which to conclude he made a legitimate request for protection which was ignored by

staff."  (Third Step Grievance Response, attached as part of attachment #1 to Exhibit 5 of

Defendants' Motion for Summary Judgment)

 While plaintiff's grievance proceeded through all three steps of the MDOC grievance

process, defendants argue that plaintiff failed to properly exhaust his administrative remedies

because his grievance was filed late.  Pursuant to MDOC policy directives, grievances must be

filed within seven business days of an incident; specifically, a prisoner must attempt to resolve a

grievance within a staff member within two business days after becoming aware of a grievable

issue and, assuming the prisoner is unable to do so, he must file the Step I grievance within five

days of attempting to resolve the grievance with a staff member.  (PD 03.02.130,

"Prisoner/Parolee Grievances" ¶¶ R, X attached as Exhibit 12 to Defendants' Motion for

Summary Judgment)  In this case, plaintiff's grievance regarding the June 12, 2006 incident was

filed on July 3, 2006 and it was clearly beyond the seven calendar days deadline.

 Despite the fact that plaintiff's Step I grievance was filed late under MDOC policy

directives, he should still be deemed to have properly exhausted his administrative remedies.

"The level of detail necessary in a grievance to comply with the grievance procedures will vary

from system to system and claim to claim, but it is the prison's requirements, and not the PLRA,

that define the boundaries of proper exhaustion."  Jones, 127 S.Ct. at 923.  As evidenced by the

fact that plaintiff's grievance was decided on its merits at three separate steps, MDOC itself was

satisfied that plaintiff timely filed his grievance.  Moreover, defendant's own evidence demonstrates that plaintiff was transferred four days after his assault, which likely had an impact on his ability to file a grievance.

Additionally, finding that plaintiff exhausted his administrative remedies would be consistent with the exhaustion requirement.  The Sixth Circuit has identified the benefits of exhaustion to include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record."  Jones, 127 S.Ct. at 923.  In this case, the prison ruled on the merits of the grievance and, therefore, it also addressed a complaint about the program it administers and improved this litigation by the preparation of a useful record.

Given that the goals of the exhaustion requirement have been met and that MDOC was satisfied with the timeliness of plaintiff's grievance, plaintiff has properly exhausted his administrative remedies with regard to his claim against Tribley and Sprader.  Therefore, Tribley and Sprader are not entitled to summary judgment on that basis.

**b.  Condition of Confinement Claim**

To state a viable § 1983 claim, a plaintiff must allege that: (1) he was deprived of a right, privilege or immunity secured by the Federal Constitution or the laws of the United States; and (2) the deprivation was caused by a person while acting under color of state law.  Doe v. Wigginton, 21 F.3d 733, 738 (6th Cir. 1994).

Where the harm is perpetrated by another prisoner, rather than by a government official, the claim is characterized as one of "conditions of confinement," rather than of "excessive use of government force." Thaddeus-X v. Blatter, 175 F.3d 378, 400-01 (6th Cir. 1999) (citations omitted). In conditions of confinement litigation, the Eighth Amendment is triggered by the "unnecessary and wanton infliction of pain." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (citing Wilson v. Seiter, 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)).

To succeed on a conditions of confinement claim, a plaintiff must show: (1) the deprivation alleged is, objectively, 'sufficiently serious,' and (2) the prison official had a sufficiently culpable state of mind. Farmer, 511 U.S. at 834. A sufficiently culpable state of mind is one of 'deliberate indifference' to inmate health and safety. Farmer, 511 U.S. at 834, quoting Wilson, 501 U.S. at 302-03. In defining deliberate indifference, the Farmer Court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. [Farmer, 511 U.S. at 837-38.]

In this case, Tribley and Sprader argue that, because they had no knowledge that some unknown person might slash plaintiff with a razor in the yard, they are entitled to summary judgment on plaintiff's failure to protect claim. In support of that argument, both Tribley and Sprader provided affidavits. In Tribley's affidavit, she states that she never received the letter, attached to plaintiff's complaint, that plaintiff claimed he sent to her. (Tribley's Affidavit,

attached as Exhibit 4 to Defendants' Motion for Summary Judgment, ¶ 5)  Tribley also stated

that she met her duty to protect plaintiff at all times he was in her care, custody and control.

(Tribley's Affidavit, attached as Exhibit 4 to Defendants' Motion for Summary Judgment, ¶ 7)

In Sprader's affidavit, he states that he has no record of receiving the letter, attached to

plaintiff's complaint, that plaintiff claimed he sent to him.  (Sprader's Affidavit, attached as

Exhibit 5 to Defendants' Motion for Summary Judgment, ¶ 4)  Sprader also stated that he does

not recall ever seeing the letter or plaintiff ever speaking with him about problems in plaintiff's

housing unit.  (Sprader's Affidavit, attached as Exhibit 5 to Defendants' Motion for Summary

Judgment, ¶ 4)          Along with his response to defendants' motion for summary judgment,

plaintiff also provided an affidavit.  In plaintiff's affidavit, he states that, on May 31, 2006, he

sent a letter to Sprader by institutional mail.  (Plaintiff's affidavit, ¶ 15, attached to his Response

to Defendants' Motion for Summary Judgment)  Plaintiff also states that he had tried to speak

with Sprader prior to sending the letter, but was told that Sprader was busy.  (Plaintiff's affidavit,

¶ 16, attached to his Response to Defendants' Motion for Summary Judgment)  Moreover, as

part of his complaint, plaintiff attached a letter addressed to Sprader and dated May 31, 2006.

(May 31, 2006 Letter, attached as Exhibit H to Plaintiff's Complaint)  In that letter, plaintiff

described the situation in his housing unit and stated:

> I'm being threatened by people I don't even know, and I don't
> want to hurt anyone or have anyone hurt me, so I'm asking you to
> have me moved to Unit 11, because this is a serious situation I'm
> in. I was forced to write this letter because you refused to see me.
> [May 31, 2006 Letter, attached as Exhibit H to Plaintiff's
> Complaint]

-26-

Plaintiff further stated in his affidavit that he sent Tribley a letter on May 23, 2006, regarding the seriousness of the situation in plaintiff's housing unit and his need to move.  (Plaintiff's affidavit, ¶ 18, attached to his Response to Defendants' Motion for Summary Judgment)  As part of his complaint, plaintiff attached a letter addressed to Tribley and dated  May 23, 2006.  (May 23, 2006 Letter, attached as Exhibit G to Plaintiff's Complaint)  In that letter, plaintiff described his need to use a typewriter and the problems other prisoners had with plaintiff.  Plaintiff also wrote in the letter that:

> this is to inform you that should a serious altercation occur concerning what it is I need to do, and I'm approached or threatened the wrong way, could lead to a serious situation because I'm going to protect me.  I asked to be transferred to 11 unit where I'm told they have typing booths and areas to do legal work in.  But in the meanwhile, I don't know what (if anything) is going to happen from one day to the next?  I'm gonna let someone else worry about that.  However, let it be known that if I'm assaulted by another prisoner or have to defend myself because of what I'm doing for me, then someone will be held liable. [May 23, 2006 Letter, attached as Exhibit G to Plaintiff's Complaint]

Viewing the evidence in a light most favorable to plaintiff, as the court must, a genuine issue of material fact exists with respect to plaintiff's condition of confinement claim against Tribley and Sprader.  As discussed above, to succeed on a conditions of confinement claim, a plaintiff must show: (1) the deprivation alleged is, objectively, 'sufficiently serious,' and (2) the prison official had a sufficiently culpable state of mind, i.e. one of deliberate indifference. Farmer, 511 U.S. at 834.  In this case, defendants do not dispute that the alleged deprivation was objectively sufficiently serious and, instead, argue that they did not know of any danger to plaintiff and therefore they did not act with deliberate indifference.  However, plaintiff's

evidence demonstrates that he sent letters to both Tribley and Sprader detailing the dangers he was facing and they did nothing in response prior to plaintiff being assaulted.  Whether or not plaintiff ultimately prevails on his claim, genuine issues of material fact exist and Tribley and Sprader are not entitled to summary judgment.

### 4.  Claim Against Killips and Coffey

In Count IV, plaintiff alleges that both Killips and Coffey are responsible for the damage done to plaintiff's typewriter during plaintiff's prison transfer.  (Complaint, ¶¶ 32-33)

Pursuant to the Fourteenth Amendment's Due Process Clause, no State shall "deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. To state a procedural due process claim under § 1983, a plaintiff must demonstrate that he possessed a protected liberty or property interest and that he was deprived of that interest without due process.  Hahn v. Star Bank, 190 F.3d 708, 716 (6th Cir. 1999).

In this case, while defendants do not deny the fact that plaintiff had a protected property interest in the typewriter, they do argue that plaintiff was not deprived of that interest without due process.  Generally, the process that is due before a property deprivation includes prior notice and an opportunity for a predeprivation hearing.  Warren v. City of Athens, Ohio,  411 F.3d 697, 709-710 (6th Cir. 2005).  "Under circuit precedent, a § 1983 plaintiff can prevail on a procedural due process claim by demonstrating that the property deprivation resulted from either: (1) an established state procedure that itself violates due process rights, or (2) a "random and unauthorized act" causing a loss for which available state remedies would not adequately compensate the plaintiff."  Warren, 411 F.3d at 709-710.  A plaintiff alleging the first element of

-28-

this test would not need to demonstrate the inadequacy of state remedies.  <u>Moore v. Bd. of Educ.</u>

<u>of Johnson City Sch.</u>, 134 F.3d 781, 785 (6th Cir.1998), but if a plaintiff pursues the second line

of argument, he must navigate the rule of <u>Parratt v. Taylor</u>, 451 U.S. 527, 539, 101 S.Ct. 1908,

68 L.Ed.2d 420 (1981), which holds that a state may satisfy procedural due process with only an

adequate postdeprivation procedure when the state action was "random and unauthorized." See

<u>Warren</u>, 411 F.3d at 709-710; <u>see also</u> <u>Zinermon v Burch</u>, 494 U.S. 113, 128; 110 S. Ct. 975;

108 L.Ed.2d 100 (1990) (narrowing <u>Parratt</u> to only those situations where predeprivation process

would have been impossible or impractical).  In this context, "unauthorized" means that the

official in question did not have the power or authority to effect the deprivation, not that the act

was contrary to law.  <u>Warren</u>,  411 F.3d at 709-710.

　　　　Defendants did not have the power or authority to effect the deprivation, so to prevail in

summary judgment they must demonstrate that adequate postdeprivation remedies were

available to plaintiff.  The Sixth Circuit has found in the past that meaningful postdeprivation

remedies are available to plaintiffs under Michigan state law to redress the alleged loss of

property.  <u>Copeland</u>, 57 F.3d at 480; <u>Wilson v. Lane</u>, No. 94-3477, 142 F.3d 438, *1 (6th Cir.,

March 12, 1998) (table).  In <u>Copeland</u>, the Sixth Circuit identified Michigan's adequate

postdeprivation remedies as including an action for claim and deliver pursuant to Michigan

Court Rule 3.105, a civil action to recover possession of or damages for goods and chattels

unlawfully taken or detained pursuant to M. C. L § 600.2920, the procedure to compensate for

alleged unjustifiable acts of state officials pursuant to M. C. L. § 600.6401.  <u>Copeland</u>, 57 F.3d at

480.  The Sixth Circuit also noted in <u>Copeland</u> that a state agency in Michigan is subject to the

Michigan Administrative Procedures Act, M. C. L. §§ 24.201-.403, and that MDOC in particular is subject to numerous state laws relating to prisoner grievances.  M.C.L. §§ 791.251-.255.[4]

In his response to defendants' motion for summary judgment, plaintiff argues that, even if remedies are available pursuant to M.C.R. 3.105 or M.C.L. § 600.2920, he is not bound by law to pursue those remedies and the only requirement he must meet before filing this action was to exhaust his administrative remedies.  (Plaintiff's Response to Defendants' Motion for Summary Judgment, p. 19)  However, while plaintiff is not bound to pursue those adequate postdeprivation remedies, where they are available he is barred from bringing a procedural due process claim pursuant to § 1983.  Warren, 411 F.3d at 709-710.  Given the availability of postdeprivation remedies in the state if Michigan to redress a loss of property, plaintiff is barred from bringing his procedural due process claim against Killips and Coffey and they are, entitled to summary judgment.

**V. Conclusion**

For the reasons stated above, the court recommends that defendants' motion for summary judgment be **GRANTED IN PART** and that the claims against MDOC, Williams, Abdoo, Gordon, Killips and Coffey be dismissed with prejudice.  The claim against Tribley and Sprader should be allowed to proceed.

---

[4]Defendants' evidence demonstrates that plaintiff has requested  reimbursement through MDOC.  (Grievance KCF 06-07-827-19e, attached as Exhibit 11 to Defendants' Motion for Summary Judgment)  The outcome of the grievance procedure is unclear; on February 15, 2007, the state administrative board sent plaintiff a letter indicating that his claim was being returned to MDOC for further review.  (Letter, attached as Exhibit 6 to Plaintiff's Response to Defendants' Motion for Summary Judgment)

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Howard v. Secretary of HHS</u>, 932 F.2d 505, 508 (6th Cir. 1991); <u>United States v. Walters</u>, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  <u>Willis v. Secretary of HHS</u>, 931 F.2d 390, 401 (6th Cir. 1991); <u>Smith v. Detroit Fed'n of Teachers Local 231</u>, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

<div style="text-align:center; margin-left:30%;">

s/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge

</div>

Dated:  May 7, 2008

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and plaintiff via the Court's ECF System and/or U. S. Mail on May 7, 2008.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan